[No. 6904. Decided January 15, 1908.]

ANDREW BARCLAY, *Respondent*, v. PUGET SOUND LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—RELATION—INDEPENDENT CONTRACTOR. The relation of an independent contractor is not created by a contract whereby one agrees to employ the help and operate a lath mill and to receive as compensation a certain sum per thousand lath, after the owner has paid the employees therefrom, the owner having retained control of that department of the mill and the mode of work, and control over the workmen employed.

SAME—NEGLIGENCE—ACTIONS FOR INJURIES—GUARDING MACHINERY —QUESTION FOR JURY. The question as to whether machinery can be advantageously guarded under the factory act is for the jury where that was the principal issue in the case and the testimony is conflicting.

SAME—EVIDENCE—ADMISSIBILITY. Upon an issue as to whether machinery can be advantageously guarded, evidence that a certain contrivance could have been attached as a guard is not objectionable because the same was not in general use or commonly known, the question whether reasonable care was exercised in providing a guard being for the jury in such a case.

SAME. In an action for personal injuries received on a trimmer saw through the alleged failure to provide a guard, evidence as to the necessary size of the saw is immaterial, there being no issue on that question.

SAME—TRIAL—INSTRUCTIONS. An instruction upon the necessity of guarding machinery under the factory act, stating the law too broadly when considered alone, is not ground for reversal, where, considered in the connection in which it was used, it was limited by other instructions in a way that could not have misled the jury.

TRIAL—MISCONDUCT OF COUNSEL—ARGUMENT. Argument of counsel going beyond legitimate limits is not ground for reversal where the trial judge rebuked counsel and removed any prejudice the jury may have received.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $5,000, for the loss of two front fingers of the right hand is excessive, and should be reduced to $2,500.

[1]Reported in 93 Pac. 430.

16—48 WASH.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered January 15, 1907, upon the verdict of a jury for $5,000 damages, for personal injuries sustained by an employee in a lath mill. Affirmed on condition of remitting $2,500.

*F. D. Oakley*, for appellant.

*Govnor Teats*, for respondent.

FULLERTON, J.—The respondent while employed in the appellant's mill cut his hand on one of the saws of a lath trimmer on which he was working, and brought this action to recover damages therefor. He based his cause of action on the contention that the saw on which he was injured was not guarded as required by the factory act. On the trial the jury returned a verdict in his favor, assessing his damages in the sum of $5,000. From the judgment entered on the verdict this appeal is taken.

The first assignment is that the court erred in overruling the demurrer to the complaint. The third and fourth paragraphs of the complaint were as follows:

"III. That on the 6th day of February, 1906, the said defendant was operating the said lath mill by and through a certain contract made by said defendant with one Robert S. Tillman, at $.75 per thousand lath produced, wherein the said Robert S. Tillman, was to employ the other men at work in said lath mill and the said defendant was to pay the said employees so employed by the said Tillman out of the said $.75 per thousand, any and all wages due them in the operation of the said lath mill, and the said Tillman, in consideration of his employment, was to receive the balance and residue, if any, computing at the rate of $.75 per thousand lath produced.

"IV. That on the 6th day of February, 1906, the plaintiff herein was employed to work in defendant's said lath mill by the said Robert S. Tillman, under and by virtue of said Tillman's contract with the said defendant as herein set out, and while at work in the said defendant's lath mill on said 6th

day of February, 1906, in the operation of the same, pulling, tying and trimming the lath at the trimmer saw, . . . etc., he was injured."

It is the appellant's claim that the facts alleged show Tillman to have been an independent contractor conducting an independent enterprise; that the relation of master and servant existed between the respondent and Tillman and not between the respondent and the appellant, and that in consequence the duty to guard the machinery devolved upon Tillman, the immediate employer, and was not a duty imposed upon it as between itself and Tillman's employer. But we cannot concede that this result follows from the facts pleaded. Tillman's relation to the appellant was rather that of an agent than that of an independent contractor. The appellant did not lease or surrender to him the management or control of this department of its mill; it surrendered only the right to employ the persons needed to carry on the work. It still retained control as to the manner and mode of doing the work, and control over the workmen employed by Tillman. This, as we say, did not make Tillman an independent contractor. He was but the agent of the appellant, acting in this regard for and on its behalf.

Under a similar state of facts, the court in *Nyback v. Champagne Lumber Co.*, 48 C. C. A. 632, 109 Fed. 732, used the following language:

"The defendant here was engaged in the general operation of its own mill. Owning the mill and machinery, it had possession, and, in a general sense, control, of all operations and work carried on. The slasher belonged to the defendant, and its sole use was to cut slabs and other like material belonging to the defendant into proper lengths for shingles, lath, and pickets, which, when cut, should belong to the defendant. The burden of keeping that machine in running order, the expense of oiling and repairing, remained with the defendant; the power to run it and the light to light it the defendant furnished; but it contracted with Barber to do the manual work necessary to operate the machine in cutting the material

so furnished, giving him no authority to use it upon other material of his own, or for anybody other than the defendant; and for the doing of this manual work upon the defendant's machine and material, as directed by the defendant, the defendant agreed to pay him a price measured by the product. While nominally Barber was to employ and pay for such assistance as he needed, the wages of the helpers were paid by the defendant, and deducted from the amount which otherwise should have been due to Barber. Without undertaking to lay down lines for the decision of other cases, we have no hesitation in saying that, upon the facts stated, and as they appear in this record, Barber was not an independent contractor, but a servant of the defendant, put in charge of a particular machine upon the terms stated, to operate it for the defendant, and that whatever duty there was to notify an inexperienced person engaged to work upon or about it of the dangers incident to the employment remained a duty of the defendant."

See, also, *Ziebell v. Eclipse Lumber Co.*, 33 Wash. 591, 74 Pac. 680; *Johnson v. Spear*, 76 Mich. 139, 42 N. W. 1092.

The appellant next argues that the evidence was insufficient to justify a finding on the part of the jury that the saw was not properly guarded, or could have been guarded in such a manner as to protect against injuries such as the respondent suffered and not seriously interfere with its practical operation. On these questions there was a substantial conflict in the evidence. Indeed, the record shows that these were the principal questions of fact in dispute in the court below, and that the greater number of witnesses called on each side were called to establish or disprove one or the other of these propositions. Under these circumstances, the questions were for the jury. As was said by us in *Rector v. Bryant Lumber etc. Co.*, 41 Wash. 556, 84 Pac. 7:

"Doubtless many cases will arise in which the court can say, as a matter of law, from the location of the machinery and the uses to which it is applied, that it can or cannot be advantageously guarded; but between these extremes there will necessarily arise a large class of cases where the question will

be solely one of fact. The statute does not attempt to specify the particular machinery that shall be guarded, but declares that all machinery of a certain class shall be provided with proper safeguards where this can be done advantageously. If there is a conflict in the testimony as to whether a particular machine can or cannot be advantageously guarded, the question must be submitted to the jury under proper instructions. Under our system of jurisprudence there is no other way to determine the fact."

See, also, *Erickson v. McNeeley Co.*, 41 Wash. 509, 84 Pac. 3; *Boyle v. Anderson & Middleton Lumber Co.*, 46 Wash. 431, 90 Pac. 433; *Noren v. Larson Lumber Co.*, 46 Wash. 241, 89 Pac. 563.

Certain witnesses called on the part of the respondent testified that the saw could have been effectively and practically guarded against dangers similar to those causing the injury to the respondent by the use of an attachment to the contrivance on which the bundles of laths were laid before being pushed into the saws, called by them a "third leg." The appellant moved the court to take from the jury all evidence relating to this attachment, on the ground that it was visionary and impracticable and not in use in mills generally, and one not commonly known to millmen. This motion was properly denied. On the question of the practicability of the contrivance, there was a difference of opinion among the witnesses, and this being so, the jury were the proper judges of that question. It was no objection to its introduction as evidence that it was not in use in mills generally, or generally known to millmen. This plea, if allowed, would defeat the purposes of the factory act. That act was passed because owners and operators of dangerous machinery did not generally guard such machinery against possible injuries to their employees, and if the act requires the use of such guards only as were in general use at the time of its passage or generally known to millmen at that time, its effectiveness is destroyed. Being intended to compel the guarding of dangerous machinery,

owners and operators of such machinery, if they wish to avoid liability for accidents to their employees, must exercise reasonable prudence and care in guarding it. They must adopt such guards as reasonable prudence, observation, and care would suggest, regardless of the question whether other owners or operators of other mills have taken action on like machinery or not. And this being their duty, whether they have exercised that due care is ordinarily a question for the jury. They are not to be holden because they may not have foreseen some ingenious contrivance that makes an effective guard, but they must not stand back and await the suggestion of remedies when the exercise of reasonable prudence and care on their part will suggest them. This third leg, it seems to us, is not so far out of the ordinary that the court could say, as a matter of law, that it could not have been foreseen by the appellants had they exercised the care required of them, and this being so, the court very properly submitted the question to the jury.

A witness called on behalf of the appellant, in answer to questions put to him by appellant's counsel, testified that it was necessary to use a thirty-two inch saw on the lath trimmer (the machine on which the respondent was injured) because a saw lesser in size would not trim all the lathes in an ordinary bundle. He was then asked if the appellant had tried a twenty-eight inch saw and found it too small. To this question an objection was interposed and sustained by the court, on the ground that the inquiry was immaterial. The ruling is assigned as error, but we think the court was right in holding the inquiry immaterial. There was no issue on this point. It was not contended that the appellant negligently used saws on the trimmer larger than the necessities of the business required, nor was it contended that smaller saws would have been more safe than the ones in use. This being true, the question sought to introduce immaterial matter, and was properly rejected.

The appellant complains of certain portions of the court's instructions to the jury. Separated from their connection with other instructions given, and considered as abstract propositions of law, doubtless some of them would be objectionable, because stating the rule too broadly. But considering them in the connection in which they are used, they were sufficiently limited in their application, and limited in a way that could not possibly have misled the jury. For example, a portion of the charge is quoted and urged as error because the court in that part of the charge did not mention the fact that practicability to guard a saw is a factor in determining whether a saw is or is not properly guarded, yet the court on this question charged the jury as follows:

"(1)  The laws of the state of Washington, in force at the time of the accident to the plaintiff, provide that any person, firm or corporation, operating a mill where machinery is used, shall provide and maintain in use, reasonable safeguards for all saws which it is practicable to guard, and which can be effectively guarded with due regard to the ordinary use of such machinery and appliances and the danger to employees therefrom, and with which employees of any such mill are liable to come in contact while in the performance of their duties. Under this law, you are instructed that if you find that the trimmer saw or saws, upon which the plaintiff claims to have been injured, were unguarded and unprotected, and that it was practicable to guard the same effectively, having due regard for the use of the same, and if you find that it was not guarded, then you are to find the defendant negligent in that regard.

"(2)  If, on the other hand, you should find that the saw was guarded, or that it was not practicable to guard it and it could not be guarded and used, then you should find that the defendant was not negligent in failing to guard the saw. There is a question of practicability as well as of fact that the saw was actually guarded. If it could not be guarded and used, the law would not require it to be guarded.

"(3)  You are instructed that the only questions for you to decide as to the negligence of the defendant, if any, are: First, whether or not the trimmer saw upon which the plain-

tiff was injured, was guarded. Second: Whether or not it was practicable to guard the said trimmer saw in question. And, third: Whether or not the trimmer saw in question could have been guarded effectively, with due regard to the ordinary use of the same, and the dangers to the plaintiff therefrom, and with which the plaintiff was liable to come in contact while in the performance of his duties as operator of said trimmer saw.

"(4) You are instructed that if you find from the evidence that the said trimmer saw or saws, or either of them, upon which the plaintiff was injured, were not guarded and protected, but could have been guarded and protected as you have been instructed, and that the plaintiff was injured by reason of the same being unguarded and unprotected, and not by his own negligence, then you are to find the verdict for the plaintiff."

It is difficult to understand how the court could have been more explicit on this point. The appellant next complains of the language of respondent's counsel used in his argument to the jury. Counsel, unquestionably did go beyond the limits of legitimate argument, but the trial judge rebuked him for it, and we think removed any prejudice or wrong impression the jury may have imbibed from the argument.

The respondent suffered the loss of the two front fingers on his right hand. The verdict was for $5,000. This we think so far excessive as to lead to the conclusion that it was given under the influence of prejudice. A verdict for one-half that sum we think will fully compensate for the injuries suffered.

The cause will be remanded to the superior court, with instructions to allow the respondent thirty days after notice to him that the remittitur has reached that court in which to remit from the amount of the judgment $2,500. If the remission be made, the judgment will stand affirmed for the remainder, but if not made, the lower court will award a new trial.

HADLEY, C. J., MOUNT, CROW, DUNBAR, and RUDKIN, JJ., concur.