[No. 7561.   Department One.   July 16, 1909.]

IDA BUSH, *Respondent*, v. INDEPENDENT MILL COMPANY, *Appellant*.[1]

MASTER AND SERVANT — NEGLIGENCE — APPLIANCE — PROXIMATE CAUSE. Where, in stepping over a shaft, the overalls of an employee were caught upon an unprotected, projecting set screw in a collar, the proximate cause of a resulting injury is the negligent failure to use a sunken set screw which would have avoided the danger.

MASTER AND SERVANT—INJURIES—DEATH OF SERVANT—PERFORM-ANCE OF DUTY—QUESTION FOR JURY. Where an employee took an oil can and ascended a ladder to oil machinery, which it was his duty to do eight or ten times a day, and was killed by being caught on an unguarded set screw on the way to the machinery, there is a question of fact for the jury as to whether he was killed while in the performance of his duty.

SAME—CAUSE OF DEATH—EVIDENCE—SUFFICIENCY—QUESTION FOR JURY. In an action for the death of an employee, there is sufficient evidence of the cause of his death to require submission of the case to the jury, where it appears that, as required to do eight or ten times a day, he started with an oil can evidently to pass a line shaft upon which there was an unguarded set screw, in order to oil machinery, that his trouser's leg was found caught by the set screw, torn and wound around the shaft, and he was hurled to the floor, receiving injuries from which he died.

MASTER AND SERVANT—ASSUMPTION OF RISKS—DUTY TO SERVANT. The fact that an employee as an oiler was also a millwright, does not preclude a recovery for his death caused by contact with a set screw, when the testimony shows that he could not make any alterations without obtaining the consent of the foreman, and that the foreman knew of the unguarded condition of the set screw and did not direct it to be safeguarded.

[1]Reported in 103 Pac. 45.

SAME—DUTIES OF SERVANT—EVIDENCE—MATERIALITY.  In an action for the death of an oiler, who was also a millwright, expert evidence as to the duties of a millwright is inadmissible where the deceased was not employed in such duties.

TRIAL—INSTRUCTIONS—BURDEN OF PROOF.  An instruction as to the burden of proof is correct when it defined the same as requiring a party to establish the fact to the satisfaction of the jury by a fair preponderance of the evidence.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—TWO WAYS—MOMENTARY FORGETFULNESS—QUESTION FOR JURY.  It cannot be said as a matter of law, that an employee is guilty of contributory negligence in stepping over a shaft elevated 16 to 18 inches, upon which there was a projecting set screw known to him, where that was one of two ways used by different persons to reach the machinery to be oiled, and the more convenient and practicable way owing to obstructions in the other way; since the act was not necessarily dangerous, and the jury had a right to infer that he had momentarily forgotten the set screw.

TRIAL—INSTRUCTIONS.  It is not error to state that the evidence is conflicting when that is the fact.

SAME.  It is not error to refuse instructions covered in the general charge.

Appeal from a judgment of the superior court for Pierce county, Reid, J., entered April 21, 1908, upon the verdict of a jury rendered in favor of the plaintiff, in an action for the death of an employee caught by a set screw upon a revolving shaft.  Affirmed.

*Hudson & Holt*, for appellant.  The plaintiff cannot recover because the deceased himself was charged with the duty as millwright of maintenance and repairs.  *Woelflen v. Lewiston-Clarkston Co.*, 49 Wash. 405, 95 Pac. 493; 5 Thompson, Negligence, §§ 5342, 5352; Reno, Employer's Liability Acts, § 54; *Birmingham Furnace & Mfg. Co. v. Gross*, 97 Ala. 220, 12 South. 36; *Pioneer Mining & Mfg. Co. v. Thomas*, 133 Ala. 279, 32 South. 15; *Conroy v. Inhabitants of Clinton*, 158 Mass. 318, 33 N. E. 525; *Roberts v. Missouri etc. Tel. Co.*, 166 Mo. 370, 66 S. W. 155; *Beall v. Pittsburgh etc. R. Co.*, 38 W. Va. 525, 18 S. E. 729; *Erskine v. Chino Valley Beet-Sugar Co.*, 71 Fed. 270; *Chicago etc. R.*

*Co. v. Snyder,* 117 Ill. 376, 7 N. E. 604. It was error to exclude evidence of his duties as millwright. *Birmingham Furnace & Mfg. Co. v. Gross, supra.* It was error to instruct that the burden was upon plaintiff to make out her case "to the satisfaction of the jury." *Ruff v. Jarrett,* 94 Ill. 475; *Wollf v. Van Housen,* 55 Ill. App. 295; *Bryan v. Chicago etc. R. Co.,* 63 Iowa 464, 19 N. W. 295; *Gage v. Louisville etc. R. Co.,* 88 Tenn. 724, 14 S. W. 73; *McBride v. Banguss,* 65 Tex. 177; *Fordyce v. Chancey,* 2 Tex. Civ. App. 24, 21 S. W. 181; *Finks v. Cox* (Tex. Civ. App.), 30 S. W. 512; *Feist v. Boothe* (Tex. Civ. App.), 27 S. W. 33; *Mitchell v. Hindman,* 150 Ill. 538, 37 N. E. 916; *Shinn v. Tucker,* 37 Ark. 580. It is error for the court to instruct the jury that there is, or that there is not, a dispute on any given question, unless it is perfectly clear and it is admitted. *Black v. Thornton,* 30 Ga. 361; *Bardwell v. Ziegler,* 3 Wash. 34, 28 Pac. 360. The defendant was not liable unless the deceased was in the performance of his duty at the time of the accident. 13 Ency. Plead. & Prac. 893; *Tutwiler Coal, Coke & Iron Co. v. Farrington,* 144 Ala. 157, 39 South. 898; *Southern R. Co. v. Williams,* 143 Ala. 212, 38 South. 1013; *Geis v. Tennessee Coal, Iron & R. Co.,* 143 Ala. 299, 39 South. 301; *Benson v. Lancashire etc. R. Co.,* 1 K. B. 292; *Smith v. South Normanton C. Co.,* 1 K. B. 24; 1 Dresser, Employers' Liability, § 13. All the essential requirements and conditions of liability fixed by the statute must exist before liability can arise under it, and in respect to these matters the statute is strictly construed. 4 Thompson, Negligence, §§ 4569-4582; Reno, Employers' Liability Acts, §§ 13, 14, 15; *Georgia Pac. R. Co. v. Propst,* 85 Ala. 203, 4 South. 711; *Dean v. East Tennessee V. & G. R. Co.,* 98 Ala. 586, 13 South. 489. The employer holds the affirmative of each of the statutory provisions on which this recovery depends. 6 Thompson, Negligence, § 7726; *Mobile & O. R. Co. v. George,* 94 Ala. 199, 10 South. 145. One who goes out of his way and thereby comes in contact with a set screw

which he would not have otherwise encountered, is not entitled to the protection of the act. *Glens Falls Portland Cement Co. v. Traveler's Ins. Co.*, 162 N. Y. 399, 56 N. E. 897; *Powalske v. Cream City Brick Co.*, 110 Wis. 461, 86 N. W. 153. The burden is on the employee to show that breach of the master's duty was the proximate cause of the injury. Cooley, Torts, p. 69; 1 Shearman & Redfield, Negligence, p. 57; Reno, Employers' Liability Acts, §§ 53, 54, 55; 2 Labatt, Master & Servant, §§ 834-836, and cases cited. No action can be maintained where the cause of the accident is merely conjectural, or involved in such doubt and obscurity as to leave the proximate cause of it uncertain. 2 Labatt, Master & Servant, § 837; 6 Thompson, Negligence, §§ 7652-7698; 1 Shearman & Redfield, Negligence, § 57; *Dobbins v. Brown*, 119 N. Y. 188, 23 N. E. 537; *Peterson v. Union Iron Works*, 48 Wash. 505, 93 Pac. 1077; *Olmstead v. Hastings Shingle Mfg. Co.*, 48 Wash. 657, 94 Pac. 474; *Hansen v. Seattle Lumber Co.*, 31 Wash. 604, 72 Pac. 457; *Armstrong v. Cosmopolis*, 32 Wash. 110, 72 Pac. 1038; *Reidhead v. Skagit County*, 33 Wash. 174, 73 Pac. 1118; *Stratton v. Nichols Lumber Co.*, 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881; Bailey, Master's Liability, 503; 17 American Negligence Cases, 250 to 280. The finding of the jury that the evidence failed to show that the deceased was caught while stepping over the set screw, and failed to show what he was doing or where he was going, constituted a finding against the party on whom the burden of proof with respect to these matters rested. *Morrow v. Com'rs Saline County*, 21 Kan. 484; *Union Pac. R. Co. v. Shannon*, 38 Kan. 476, 16 Pac. 836; *Flannery v. Kansas City etc. R. Co.*, 23 Mo. App. 120; *McMarshall v. Chicago etc. R. Co.*, 80 Iowa 757, 45 N. W. 1065, 20 Am. St. 445. The deceased was guilty of contributory negligence in failing to take reasonable precautions or use reasonable efforts to avoid the danger. 5 Thompson, Negligence, § 5328; *Woelflen v. Lewiston-Clarkston Co.* and *Beall v. Pittsburgh etc. R. Co.*, *supra;*

*McCarthy v. Whitney Iron-Works Co.,* 48 La. Ann. 978, 20 South. 171; *Colorado Cent. R. Co. v. Martin,* 7 Colo. 592, 4 Pac. 1118; *Ramm v. Hewitt-Lea Lumber Co.,* 49 Wash. 263, 94 Pac. 1081; 25 Cyc. 1253; *Hoffman v. American Foundry Co.,* 18 Wash. 287, 51 Pac. 385; *Beltz v. American Mill Co.,* 37 Wash. 399, 79 Pac. 981; *Stratton v. Nichols Lumber Co.,* 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881; *Bundy v. Union Iron Works,* 46 Wash. 231, 89 Pac. 545; *Steeples v. Panel & Folding Box Co.,* 33 Wash. 359, 74 Pac. 475. The conduct of the deceased, in coming in contact with the set screw in this case, was contributory negligence. *Hunter v. Washington Pipe etc. Co.,* 43 Wash. 167, 86 Pac. 171; *Bier v. Hosford,* 35 Wash. 544, 77 Pac. 867; *Anderson v. Inland Tel. etc. Co.,* 19 Wash. 575, 53 Pac. 657, 41 L. R. A. 410; *Olson v. McMurray Cedar Lumber Co.,* 9 Wash. 500, 37 Pac. 679.

*Garvey & Kelly,* for respondent. The breach of the master's statutory duties in regard to this set screw was negligence *per se. Whelan v. Washington Lumber Co.,* 41 Wash. 153, 83 Pac. 98, 111 Am. St. 1006; *Hoveland v. Hall Bros. Marine R. etc. Co.,* 41 Wash. 164, 82 Pac. 1090; *Hansen v. Seattle Lumber Co.,* 41 Wash. 349, 83 Pac. 102; *Williams v. Ballard Lumber Co.,* 41 Wash. 338, 83 Pac. 323. Under the factory act a servant cannot be held guilty of contributory negligence in such a case as this, unless the injury was sustained through a negligent act of his own, and not solely by the dangers of the situation. *Hall v. West & Slade Mill Co.,* 39 Wash. 447, 81 Pac. 915; *Rector v. Bryant Lumber etc. Co.,* 41 Wash. 556, 84 Pac. 7. The instruction defining the burden of proof was proper. *Hart v. Niagara Fire Ins. Co.,* 9 Wash. 620, 38 Pac. 213, 27 L. R. A. 86; *Carstens v. Earles,* 26 Wash. 676, 67 Pac. 404.

Gose, J.—The respondent, plaintiff below, is the widow of John Bush, deceased, who died on the 9th day of October, 1907, from an injury sustained on the 17th day of June of

the same year. The complaint charged, in addition to the facts stated, that on the 17th day of June, 1907, and for some months prior thereto, the appellant was the owner of and engaged in operating a sawmill; that on the day stated the deceased was in its employ as a filer and oiler of the machinery and boxes on the upper deck of the mill; that there was a revolving shaft on the upper deck of the mill about nine feet from the main floor; that there was a collar attached to the shaft by means of an unguarded, projecting set screw; that the set screw could have been effectively guarded; that, while engaged in his regular employment, the clothing of the deceased was caught on the set screw; that the deceased was thrown to the main floor with such violence that his back was broken, resulting in his death on the date heretofore stated. The giving of the statutory notice of the injury was also alleged. The appellant pleaded affirmatively that the injury of the deceased was due to his own negligence, and that it was his duty to properly safeguard the machinery. The case was tried to the jury, which returned a general verdict for the respondent in the sum of $3,200, and made the following special findings:

"Interrogatory 1. Was John Bush injured while stepping over the shaft and set screw on which his clothing was caught? Answer: The evidence did not show that he was injured while stepping over the shaft but it did show that he was caught by said set screw.

"Interrogatory 2. Did he know that the set screw was there, and that it projected? Answer: Yes.

"Interrogatory 3. Where was he going and what was he doing at the time he was caught by the set screw? Answer: The evidence did not show where he was going or what he was doing at the time he was caught by the set screw.

"Interrogatory 4. Was there a plank laid to the right looking north, of the timber for the boxing and end of the shaft, as shown in defendant's exhibit No. 4? Answer: Yes. One 8 inch plank.

"Interrogatory 5. If you find that at the time of the injury to John Bush there was a plank lying to the right,

looking north, of the timber for the boxing and end of the shaft as shown in defendant's exhibit No. 4, then state whether the plank or planks leading from the ladder to the platform of the canting gear were so placed that a person coming along them could step as safely and conveniently to the said plank lying to the right of the timber for the boxing and end of the shaft, as he could to the plank or planks lying to the left of the said timber and end of the shaft? Answer: No.

"Interrogatory 6. Do you find from the evidence that there was a guard or protection placed over the set screw complained of in this case, and that John Bush removed it and failed to replace it? Answer: No."

This appeal is taken from a judgment entered upon the general verdict. The evidence shows that the appellant had not complied with the factory act. Laws 1905, page 164.

The appellant, at the time of the injury, was operating a sawmill in a one and one-half story building. The principal machinery was on the lower floor. The canting gear was on the upper deck, and was operated by the sawyer at his post on the lower floor, by a rod attached to the line shaft on the upper deck. The end of the shaft rested on a timber about eight inches square. There was a collar attached to the shaft by a projecting set screw, about five-eights of an inch in length. There was a pulley about thirty inches in diameter between the canting gear and the collar. The distance between the pulley and the set screw was about eleven and one-half inches. There was no floor on the upper deck. A ladder, extending from the main floor to the upper deck, afforded the only way of going from the one to the other. One of the duties of the deceased was to oil the boxing of the canting gear and the line shaft when the machinery was in operation. Just before the accident and while the machinery was in operation, the deceased took an oil can and ascended the ladder to the upper deck, presumably for the purpose of oiling the boxing. There were three eight-inch boards leading from the ladder to the line shaft, one of which passed

to the right of the timber on which the shaft rested. The other two passed to the left side of the timber.

After the deceased had been thrown to the lower floor, the machinery was stopped and an investigation of the cause of the accident was made. The right leg of the deceased's overalls had been torn off, and was wound around the shaft at the point of the projecting set screw. There was a tear in the leg of the overalls, some ten or twelve inches from the bottom and toward the back part of the leg. The oil can was found a few feet from the set screw, in a slanting position, and a part of the oil had run out. No one saw any part of the accident except the falling of the body.

There were two ways of passing the boxing on the shaft to reach the canting gear; one by walking on the eight-inch plank and passing to the right of the east end of the shaft, then turning west to the canting gear. There was evidence tending to show that this way was impracticable, owing to the narrowness of the plank, and because there were scantling lying across it, and because the height of the ceiling made it necessary to go in a stooping posture. The other way was to walk on the two eight-inch planks and step over the shaft at the east side of the pulley. There was evidence tending to show that this was dangerous, because the shaft and set screw were raised about sixteen or eighteen inches above the plank, and also on account of the pulley, which was about eleven and one-half inches from the set screw. The evidence tended to show that both ways were used in going to the canting gear. The deceased at the time of the accident chose the latter way. The evidence tended to show that, when the latter way was used, the party crossing the shaft would take hold of a vertical rod, step over the shaft, turn to the left, and walk to the canting gear. This was the nearer way. The evidence clearly shows that a sunken or safety set screw without a head could have been used, and that there would have been no danger in stepping

over the shaft. This method was adopted shortly after the accident.

Numerous errors have been assigned, and the discussion has taken a wide range in the appellant's brief; but the view we take of the case will make it unnecessary to separately consider each of the assignments. It must be conceded that a sunken or a safety set screw could have been used, and that, if it had been used, there would have been no danger in stepping over the line shaft on the upper deck. The proximate cause of the injury—that is, the efficient cause without which the accident would not have occurred, was the failure of the appellant to use a sunken set screw.

The appellant first urges that the evidence does not show that the deceased was injured while in the performance of his duty. There is no force in this position. It is conceded that it was a part of his duty to oil the boxing on the canting gear and line shaft, and that he did so eight or ten times a day. We have seen that he ascended the ladder with the oil can in his hand, presumably for the purpose of discharging this duty. It was, therefore, a question of fact for the jury to determine whether he was engaged in the performance of his duty when he was injured.

It is next urged that the cause of the accident is so involved in doubt that there can be no recovery. An issuable fact may be proven by direct or circumstantial evidence, or by the two combined. We have seen, that it was the duty of the deceased to oil the boxing on the upper deck; that he did so eight or ten times each day; that he had gone to the upper deck with the oil can; that in order to reach the canting gear he had to pass the line shaft; that there was boxing on the line shaft which he was required to oil; that he was seen to fall with great velocity from the upper deck; that his back was broken from the violence of the fall; that his right trousers' leg had been torn from his body and was wound around the shaft at the set screw; that there was a rent in the cloth, showing that it had been caught in the set

screw; that the oil can was found a few feet distant from the shaft, partially overturned; and that part of the oil had run out. The cause of the accident was therefore removed from the field of speculation, if doubt can be removed in this class of cases. The jury had no difficulty in determining the cause of the accident, and we do not feel disposed to either raise or adopt a doubt which would have no support in the evidence.

It is next contended that the deceased was employed as a millwright, and that, as such, it was his duty to safeguard the set screw. Numerous cases are cited in support of this contention. The position would be sound were it not for the fact that it finds no support in the evidence. It is true that one or two witnesses testified that he was the millwright and that such was his duty. However, the true relation of the deceased to the operation of the mill is shown by the testimony of Frank Isley, the foreman of the mill, who employed and instructed the deceased as to his duties. He testified as follows:

"Question: Did he [meaning the deceased] report to you if he was going to make any change or alteration of any kind? Would he consult with you at first about it? Answer: Yes, sir. Q. Why would he do that? A. To get my permission to do so."

He further testified, that he knew of the unguarded condition of the set screw; that it was dangerous to pass between the pulley and the set screw; and that he never directed the deceased to protect it. It is true that he stated that a hood had been placed over the set screw before the deceased commenced work, and that the deceased had removed it. This testimony was contradicted by other witnesses, and we have seen that the jury found that the deceased did not remove it.

The appellant asked one Jackson, a witness, to state the duties of a millwright. An objection was sustained to this line of evidence, which is urged as error. The court perti-

nently remarked that what this man did was the proper inquiry. We have already shown, by an excerpt from the testimony of the foreman, that this line of evidence was immaterial. It was not important what were the duties of a millwright in other mills. The question was, what was the duty of the deceased in this mill. The evidence clearly shows that he filed the saws and oiled the machinery on the upper deck; that he could not make any change or alteration without the permission of the foreman, and that the latter knew of the defect which caused the injury, and did not direct it to be safeguarded. This case is, therefore, clearly distinguishable from *Woelflen v. Lewiston-Clarkston Co.*, 49 Wash. 405, 95 Pac. 493, and kindred cases.

The court gave the following instruction, to which error is assigned:

"Now, I want to make clear to you, if I can, this matter of burden of proof. If the testimony in a case were equally balanced, just as much testimony, credible testimony, on one side as on the other, then it is the duty of the court or jury to decide against the person who has the burden upon him, because by the burden means that he must show to the satisfaction, and if it is evenly balanced, then of course the person who has had the burden has not overcome that; so that when I say the burden of proof in the main case of showing that the deceased lost his life by being caught on a set screw that was unguarded, is upon the plaintiff, it means that they must make it out to your satisfaction or by a fair preponderance of the evidence; likewise, when I say the burden of proof of showing negligence upon his own part, which has proximately caused his death, is upon the defendant, they must make that out to your satisfaction, by a fair preponderance of the evidence."

The instruction is correct, under the rule announced in *Carstens v. Earles*, 26 Wash. 676, 67 Pac. 404, and *Hart v. Niagara Fire Ins. Co.*, 9 Wash. 620, 38 Pac. 213, 27 L. R. A. 86.

The appellant contends in his brief, and earnestly contended in the oral argument, that the deceased was guilty of

contributory negligence, and that for this reason there should be a reversal of the judgment. It contends that the plank leading to the right of the shaft, to which reference has been made, afforded a safe way to reach the canting gear. The jury upon competent evidence has disposed of this contention. The only danger that could arise from walking on the two eight-inch planks leading to the left, and stepping over the shaft, was from the presence of the pulley and the set screw. The injury did not come from the pulley. Can it be said, as a matter of law, that it was negligence for the deceased to step over the set screw, which was elevated some sixteen or eighteen inches above the timbers upon which he was walking? We have seen that both ways were used by different persons in going to the canting gear, and that the projecting set screw was the only danger. It is true that the jury found that the deceased knew of the existence of the set screw. We have seen that the shaft containing the collar and set screw was placed upon a timber eight inches in width. There are two reasons why we cannot declare as a matter of law that it was negligence for the deceased to step over the set screw. The first it that, whilst injury might result therefrom, the act was not necessarily a negligent one. The other, and perhaps the stronger one, is that the law does not require a person engaged in the performance of duty to constantly keep his mind on some defective piece of machinery. To do so would place too great a burden on the human mind. In *Hall v. West & Slade Mill Co.*, 39 Wash. 447, 81 Pac. 915, the respondent's clothing was caught upon an unguarded set screw with which he came in contact in a moment of forgetfulness, while handling a heavy piece of timber between two parallel lines of rollers located about four feet apart. Speaking to the question of contributory negligence, at page 451, the court said:

"But it will hardly do to say that an employee is guilty of contributory negligence for merely working in a dangerous place when he does not assume the risk of injury for work-

ing therein. It is true that in such cases contributory negligence and assumption of risk approximate, and it is difficult to draw a line between them, but we think that, to convict an employee of contributory negligence for working in a place where he does not assume the risk of injury, it must be shown that he did not use care reasonably commensurate with the risk to avoid injurious consequences; in other words, that it was some negligent act of his own that caused his injury, and not alone the dangers of his situation."

In the *Hall* case the injured party testified that he came in contact with the ungarded machinery in a moment of forgetfulness, and in the instant case the injured party did not testify, but it was a legitimate and a reasonable inference that the jury had a right to deduce from the testimony, that the deceased did momentarily forget the existence of the set screw. Such inference is indeed strengthened because, as we have said, the act of stepping over was not necessarily negligent. See, also, *Rector v. Bryant Lumber etc. Co.*, 41 Wash. 556, 84 Pac. 7; *Erickson v. McNeeley & Co.*, 41 Wash. 509, 84 Pac. 3.

There was no error in the instruction that the testimony was conflicting upon certain points. It merely stated an actual fact. Nor did the court err in refusing to give the requested instructions. The instructions given in their entirety clearly stated the governing law. Other minor questions are suggested, which we have examined and conclude are without merit.

The judgment will be affirmed with costs to the respondent.

RUDKIN, C. J., and FULLERTON, J., concur.

CHADWICK, J. (concurring)—The risk was clearly assumed, and but for the factory act respondent could not recover. Upon the merits of the case, the only defense that could be set up is that of contributory negligence. This issue was resolved against appellant by the jury. I therefore concur in the result reached by Judge Gose.

MORRIS, J. (concurring)—I concur solely upon the an-
swers to the 1st and 3d interrogatories.   If deceased was
caught on the set screw while attempting to step over the
shaft on his way to oil the canting gear, as contended for
by appellant, I think he would be guilty of such contributory
negligence as would bar a recovery.   Such an act would not
be the act of an ordinarily prudent man, and to my mind,
reasonable minds could not differ in reaching a like con-
clusion.   But the jury having specially found that the evi-
dence did not show deceased was injured while stepping over
the shaft, and that the evidence did not show where he was
going, such finding is controlling, and I cannot interpose a
contradictory finding and say he was caught while in the
act of stepping over the shaft on his way to oil the canting
gear.   For this reason alone I concur.