[No. 9749½.   Department One.   November 25, 1911.]

JOHN ROMMEN, *Respondent*, v. EMPIRE FURNITURE MANUFACTURING COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—OPERATION OF SAW—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. The operator of a ripsaw is not guilty of contributory negligence, as a matter of law, in attempting to remove a board after a pinch had stopped the saw, without first turning off the power at a switch eight feet away, or without calling some one to his assistance, where it appears that there was great danger in leaving the board in the saw to reach the switch, and where he firmly held the board and it would not be anticipated that the board firmly held would rebound upon the friction being removed in the manner that it did.

MASTER AND SERVANT—GUARDING DANGEROUS MACHINERY—QUESTION FOR JURY. Upon a conflict of the evidence, it is for the jury to determine whether a combination ripsaw could be effectively guarded under the factory act.

WITNESSES—CROSS-EXAMINATION— DISCRETION — APPEAL — EXCEPTIONS. Error cannot be predicated upon allowing cross-examination of a party's own witness who was clearly hostile, nor where no exception was taken, the same being within the discretion of the trial court.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS—MASTER AND SERVANT—FACTORY ACT—EVIDENCE. It is not prejudicial error to refuse to give an instruction as to the *prima facie* effect of a certifi-

[1]Reported in 118 Pac. 924.

cate of the state labor commissioner on the inspection of machinery to be guarded, under the factory act, to which. the party was entitled, where by other instructions an equal burden was put on the party, the jury being told that the burden was upon the plaintiff to establish one or more of his allegations of negligence, that negligence was never presumed, and must be proven by the fair preponderance of the evidence, and the court read the first section of the factory act and otherwise fully covered the law of the case.

DAMAGES—PERSONAL INJURIES — EXCESSIVE VERDICT — INJURY TO HAND. A verdict for $1,500 for the loss of a little finger, disfigurement and stiffening of the right hand, by the operator of a ripsaw, thirty-two years of age, is not so excessive as to indicate passion or prejudice.

Appeal from a judgment of the superior court for King county, Gay, J., entered March 25, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by the operator of a ripsaw. Affirmed.

*Henry S. Noon* and *James E. Bradford*, for appellant.

*J. P. Wall* and *Milo A. Root*, for respondent.

Gose, J.—This is a suit to recover damages for personal injuries. A judgment for the plaintiff is challenged by this appeal. The suit is brought under the factory act. The charges of negligence are two in number: (1) the failure of the appellant to install a belt shifter, and (2) its failure to guard its saw. The facts are these: The respondent, a cabinet maker by trade, had his right hand injured and the small finger cut off while operating a ripsaw upon a combination machine used for general cabinet work. There was no belt shifter or other device for shutting off the electric power, other than a switch some six or eight feet from the saw. The saw was not guarded. The saws, three in number, were susceptible of adjustment to an angle of forty-five degrees. They were used interchangeably for cross-cutting, ripping, beveling, and grooving. The table of the machine was about three feet square, and stationary. The saws re-

volved in a groove in the table. They varied in size from six to eight inches in diameter, and extended three or four inches above the surface of the table.

At the time the respondent received the injury, he was ripping an oak board, six or seven feet in length, six inches in width, and three-fourths of an inch in thickness. The board was placed against the saw, and after it had been ripped some eight or ten inches, there was a pinch or squeeze which stopped the saw. The respondent then detached the board and placed the other end against the saw. When the board had been ripped about four or five feet, there was a second pinch which stopped the saw. The respondent then tried to loosen the board and start the saw, but was unable to do so. He then took a wedge, six or seven inches in length, which he had prepared for the purpose, reached over the saw with his right hand, and inserted it in the opening in the board about ten inches beyond the saw, for the purpose of releasing the pressure and starting the saw. When the pressure was released, the board was thrown backward, and the respondent's hand came in contact with the saw, causing the injury. When he reached over the saw to insert the wedge in the board, he had his left hand upon the end of the board next to him, and his body against the board and the table of the machine. He testified that he was holding the board tightly, and did not expect it to be thrown backward, although he knew it had that tendency when the friction was taken off. Two of the appellant's witnesses testified that they would not have anticipated that a board would rebound upon the friction being removed, if the operator was firmly pressing it with his body. Eight other cabinet workers were at work on the same floor with the respondent, and each used the machine whenever his work required it.

Upon these facts, appellant contends that the respondent was guilty of contributory negligence which bars a recovery. The argument is that the switch, some six or eight

feet from the machine, afforded a safe way of doing the work; and that, when the saw pinched and could not be started, it was the plain duty of the respondent to step to the switch, throw off the power, and then release the pressure. It is said that he chose the unsafe way, and that, in reaching over the saw, he was guilty of negligence.

In reference to the switch affording a safe way, there is evidence to the effect that it would have been dangerous to leave the board with the power on and stop the switch; and that, if the saw should have started with no one holding the board, the board would have been thrown with great force. There is further evidence that a man was killed in that manner in another mill. This clearly presented a question for the jury under a proper instruction, which the court gave. Nor can it be ruled, as a matter of law, that the respondent was guilty of negligence in reaching over the saw and inserting the wedge in the board. He was holding the board tightly with the other hand, and had the weight of his body against it and the table containing the saw. The saw was a small one, and extended only three or four inches above the surface of the table. The following cases are in point: *Bush v. Independent Mill Co.*, 54 Wash. 212, 103 Pac. 45; *Hale v. Crown Columbia Pulp & Paper Co.*, 56 Wash. 236, 105 Pac. 480; *McKean v. Chappell*, 56 Wash. 690, 106 Pac. 184; *Berger v. Metropolitan Press Printing Co.*, 61 Wash. 35, 111 Pac. 872.

In the *Bush* case, it was held that the contributory negligence of the deceased was a question for the jury, where the deceased lost his life in stepping over a revolving shaft containing a projecting set screw, where the shaft and set screw extended sixteen or eighteen inches above the floor and its presence was known to the deceased. The court said that, "whilst injury might result therefrom, the act was not necessarily a negligent one."

The appellant puts much stress upon *Laidley v. Musser Lumber & Mfg. Co.*, 45 Wash. 239, 88 Pac. 124. A read-

ing of that case will disclose that the facts are somewhat dissimilar. The court said in that case, speaking of the conduct of the plaintiff, that the act which caused the injury was one which "would naturally and almost necessarily precipitate his arm against the saw." No such statement could be made upon the facts in the instant case. Other cases are cited by the appellant which announce the rule that, where there are two ways of doing an act, the one fraught with danger and the other safe, there can be no recovery where the unsafe way is voluntarily pursued. Such cases are not controlling here. As was said in *Beltz v. American Mill Co.*, 37 Wash. 399, 79 Pac. 981:

"Every case in which negligence or contributory negligence is charged depends so largely upon its own particular circumstances that the decisions in other cases are only important in so far as they lay down or establish general rules or principles."

It is further suggested that it was the duty of the respondent to call to his assistance one of his fellow workmen, and that his failure to do so was negligence. This was also a question for the jury.

It is next contended that the factory act does not apply to a combination machine; that the saw could not have been effectively guarded with "due regard to the ordinary use of such machinery." There is abundant evidence that a belt shifter could have been placed underneath the table so that the operator of the saw, by placing his foot upon it, could have thrown off the belt and stopped the saw, and there is testimony that the saw itself could have been guarded. It is only fair to say that there is testimony to the effect that, owing to the varied uses of the saws, they could not have been effectively guarded. Upon this conflict in the evidence, the question was for the jury. *Barclay v. Puget Sound Lumber Co.*, 48 Wash. 241, 93 Pac. 430, 16 L. R. A. (N. S.) 140.

Counsel for the respondent was permitted to cross-ex-

amine his own witness, and this is assigned as error.   It suffices to say, (1) that the witness was clearly hostile to the respondent; (2) that no exception was taken to the ruling of the court; and (3) that such course was within the sound discretion of the court.

Numerous errors are assigned to the instructions given, and to the refusal of the court to give certain requested instructions.   The requested instructions, with one exception, were given in substance.   This instruction we will now consider.   The respondent was injured October 31, 1910.   On October 15 preceding, the state labor commissioner examined the appellant's machinery, and gave it a certificate to the effect that the machinery conformed, in the judgment of the commissioner, to the requirements of the factory act.   The certificate was put in evidence, and the evidence tends to show that there had been no change in the machinery between the date of the inspection and the date the respondent was injured.   The statute, Rem. & Bal. Code, § 6593, provides that the certificate shall be "*prima facie* evidence as long as it continues in force" of compliance on the part of the holder with the provisions of the act.   The certificate was issued for a year, and was in force when the injury was sustained.   The appellant submitted a written instruction covering the statutory effect of the certificate.   The court said to the jury, in reference to the certificate, in substance, that it had been put in evidence, and that they would take it to the jury room.   No other instruction is given on the subject.

Clearly, the court should have given the requested instruction.   However, we think it was error without prejudice.   The court instructed the jury that the burden was upon the respondent to establish "one or more" of the allegations of negligence alleged in the complaint, by "a fair preponderance" of the evidence; that negligence is never presumed, but that it must be proven by the party asserting it "by a fair preponderance of the evidence."   Had the

instruction been given, it would have put no other or heavier burden on the respondent. The court read to the jury the first section of the factory act, and otherwise fully and fairly covered the law of the case. In *Chicago, M. & P. S. R. Co. v. True*, 62 Wash. 646, 114 Pac. 515, we said:

"We have repeatedly held that a case will not be reversed for error that, upon the entire record, does not appear to be prejudicial."

Finally, it is said that the damages awarded are excessive. The respondent was thirty-two years of age, a cabinet maker by trade, and earning $3.50 per day when he was injured. He sustained his injury October 31, resumed work for the appellant at the same wage on December 12 following, and continued to work for it, with the exception of a lay-off of two weeks, until about March 1, 1911. With reference to his injury, the respondent testified that it "is awful painful yet, if I happen to hit it right here (showing), or bump it against anything;" that he was hurt "right in the wrist, and it went out and cut off the little finger of the right hand; split the hand open all the way, as you can see for yourselves;" and that:

"It does interfere quite a little bit because I can't close my hand in the manner I done before, because I can't close it any more than this (showing). The other hand I can close as close as I am a mind to, but I can't close them fingers in here at all (showing). If I do, it kind of stretches out in here (showing). I don't know what it is. It will be the same with this hand if I hang on to the little finger. I can't bend it (showing)."

The verdict and judgment were for $1,500. The appellant, among other cases, relies upon *Olsen v. Tacoma Smelting Co.*, 50 Wash. 128, 96 Pac. 1036. In that case the injury consisted in the loss of a little finger, and the injured party was confined to the hospital about two hours and was disabled for a time. There was a verdict and judgment for $1,500, which this court reduced to $1,000. In the case at

bar, the respondent, in addition to the loss of a little finger, suffered a disfigurement and stiffening of the hand, to what extent we cannot tell, as is shown by the excerpted testimony. The trial judge and the jury saw the hand, and were in a much better position to know the extent of the injury than is this court from reading the record. The damages awarded appear to be liberal, but we do not feel inclined to hold that they are so excessive as to indicate that the jury were influenced by passion or prejudice. Indeed, the very nature of the injury is such as to negative such a conclusion. *Keane v. Seattle*, 55 Wash. 622, 104 Pac. 819.

The judgment is affirmed.

DUNBAR, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.